LUDVIG MASTAD v. SWEDISH BRETHREN.[1]

April 26, 1901.

Nos. 11,953—(5).

**Public Entertainment—Liability of Seller of Liquor for Assault by Buyer.**

A person managing and controlling a public place of amusement, which he invites the public, on payment of an admission fee, to attend, and at which place he sells to his customers and patrons intoxicating liquors, who sells such liquors to one in attendance at such place, and thereby renders him drunk and disorderly, well knowing that when in that condition he is likely to commit assaults upon others without cause or provocation, is bound to exercise reasonable care to protect his other customers and patrons from such assaults and insults, and for a failure to do so is liable for damages at the suit of one assaulted and injured.

Action in the district court for Hennepin county to recover from defendant corporation $1,030 damages for an assault upon plaintiff, committed at a public entertainment given and controlled by defendant, by one Olson who, as alleged, had been made drunk and violent through liquor furnished by defendant in violation of law and with knowledge of Olson's quarrelsome and dangerous tendencies. Defendant demurred to the complaint as not stating a cause of action. From an order, Simpson, J., sustaining the demurrer, plaintiff appealed. Reversed.

*John W. Arctander,* for appellant.

*A. B. Darelius* and *F. N. Hendrix,* for respondent.

BROWN, J.

Appeal from an order sustaining a general demurrer to the complaint. The complaint alleges, substantially: That defendant is a corporation. The character and nature of its business is not stated. That on June 11, 1899, defendant held or gave a picnic on certain grounds at Lake Minnetonka, invited the general public to attend the same, sold tickets of admission thereto, and undertook to protect persons so invited, who bought tickets

[1] Reported in 85 N. W. 913.

and attended the picnic, from assaults by ruffians and drunken people. That plaintiff bought a ticket and spent the day on the grounds. That during the whole of the day, and through a committee appointed for such purpose, defendant unlawfully, and without license, sold intoxicating liquors on such picnic grounds to all who desired to purchase the same, although it was well aware that the sale of such liquors would be likely to cause persons to become drunk, violent, and dangerous, and likely to commit assaults and other breaches of the peace. That defendant knew that one Charles Olson, who was an attendant at the picnic, was liable to drink to excess, and when under the influence of intoxicants was an ugly and dangerous person, and likely to commit assaults on peaceable persons. That, nevertheless, defendant wrongfully and unlawfully sold him large quantities of such liquors, and to such an extent as to render him drunk and disorderly; and, although defendant had undertaken to protect plaintiff while on the grounds from assaults at the hands of such persons, it carelessly and negligently failed to procure police protection, or to provide or appoint persons who could maintain peace and order. That the said Olson, after being so made intoxicated, and by reason thereof, without cause or provocation assaulted, beat, and bruised plaintiff. The plaintiff asked to recover against the defendant damages for such assault. Defendant demurred to the complaint, which was sustained by the court below. Plaintiff appeals.

It is not only alleged in the complaint that defendant made Olson drunk, knowing him to be a dangerous and quarrelsome person when in that condition, and negligently failed and neglected to provide protection from his assaults and insults, but that defendant made the sale of liquor to him unlawfully, and without license. Whether defendant would be liable for the conduct of Olson, and for assaults committed by him while intoxicated, because of the fact that the sale of the liquor to him was unlawful, and without license, we need not determine. The cases cited by counsel for appellant sustain the affirmative of the proposition on principle, but, as it is not necessary to a decision of this case, we pass the question for future consideration.

The case made by the complaint is similar to those holding a railroad company liable for assaults committed upon passengers by fellow passengers, and similar to the rule of law applicable to hotel keepers with respect to the responsibility of the keeper for the property and effects of his guests, and the proprietors of other public places. The rule with respect to railroad companies as carriers of passengers is stated in clear language in Mullan v. Wisconsin C. Co., 46 Minn. 474, 49 N. W. 249, to the effect that a railroad company as a carrier of passengers is bound to exercise the utmost diligence in maintaining order, and guarding the passengers against violence from whatever source arising, which might reasonably be anticipated, or naturally expected to occur, in view of all the circumstances, and the number and character of persons on board. This rule, of course, applies to drunken persons permitted by the railroad company to remain upon their train; is not limited to persons the company may have made intoxicated by the unlawful or other sale of intoxicants to them; but extends as well to those who became intoxicated elsewhere, and go aboard the train in that condition. If they be permitted to remain passengers, and commit assaults upon other inoffending passengers, and such assaults are such as might reasonably be anticipated from the condition of the drunken passenger, the company is liable.

The same principle is applied to hotel or inn keepers. All who engage in a public business of that nature are bound to protect their guests, both in person and property, from acts and misconduct of wrongdoers permitted to remain upon the premises; and the rules of law applicable to the common carrier are applicable alike to them. Bishop, Non-Cont. Law, § 1173.

If such is good law as to the railroad company and as to the innkeeper,—and there is no doubt but that it is,—the same rule should apply, though, perhaps, with a lesser degree of care, to a person engaged in the sale of intoxicating liquors at a public entertainment given and controlled by him, which the public are invited to attend upon payment of an admission fee, and who sells such liquors to a person in attendance at the entertain-

ment he well knows to be violent and disorderly when intoxicated.

There is no reason on principle why a person owning and controlling such a place, who sells his wares to such a person, knowing his ugly and quarrelsome disposition when intoxicated, should not be bound to exercise at least reasonable care to protect his other guests from his assaults and insults. The proprietor of such a place has the undoubted right to exclude therefrom drunken and disorderly persons, and the right to remove and expel them when they become in that condition and disorderly, and likely to produce discord and brawls. Being clothed with such power and authority, a corresponding duty to do so in the interests of law and order, and for the protection of his other guests, should be imposed as a matter of law. We are now speaking of a person lawfully engaged in the business stated in the complaint, and not of one who violates the law by sale of intoxicating liquors without license. The case of Rommel v. Schambacher, 120 Pa. St. 579, 11 Atl. 779, is squarely in point. It is there said:

"If, on the other hand, he was guilty of making Flanagan drunk, or if he came there drunk, and Schambacher knew that fact, he was bound to see that he did no injury to his customers. All this is a plain matter of common law and good sense, and does not depend on the act of 1854, or any other statute. Where one enters a saloon or tavern, opened for the entertainment of the public, the proprietor is bound to see that he is properly protected from the assaults and insults as well of those who are in his employ as of the drunken and vicious men whom he may choose to harbor."

In line with these principles we therefore hold that a person having the management and control of a public place of amusement, which he invites the public, on payment of an admission fee, to attend, and at which he sells to his customers intoxicating liquors, who sells to one in attendance at such place intoxicating liquor to such an extent as to render him drunk and disorderly, well knowing that when in that condition he is likely to commit assaults upon others without provocation or cause, is bound to exercise reasonable care to protect his other patrons from his assaults and insults, and for a failure to do so is liable in an

action for damages to one assaulted and injured by such person.

The point is made by respondent that the complaint does not allege that defendant owned and controlled the picnic grounds. There is no direct allegation of either fact, but the complaint does allege affirmatively the facts from which its control of the picnic grounds may be fairly and reasonably inferred. The complaint is sufficient in this respect. Brunswick-Balke-Collender Co. v. Brackett, 37 Minn. 58, 33 N. W. 214.

The case of Swinfin v. Lowry, 37 Minn. 345, 34 N. W. 22, is not in point. Defendant in that case was not the proprietor of a public place where intoxicating liquors were sold, and the trial disclosed no duty on his part to protect persons from the assault of the intoxicated person. Such duty clearly follows from the relation of the parties in the case at bar, and on this ground is distinguishable from the Swinfin case.

Order reversed.